**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHARON WHEELER,

     Plaintiff,

        v.

VOICESTREAM WIRELESS SERVICES,
a/k/a VOICESTREAM a/k/a
VOICESTREAM WIRELESS
CORPORATION a/k/a T-MOBILE USA,
INCORPORATED and DIANE STRONG,

     Defendants.

CIVIL ACTION NO. 3:03-CV-1916

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is Defendants' Motion For Summary Judgment (Doc. 26) filed by Defendant Voicestream Wireless Services ("Voicestream") and Defendant Diane Strong.  The Court finds that Defendants have failed to submit evidence that Plaintiff failed to exhaust the available administrative remedies.  Therefore, the Court will deny Defendants' motion insofar as it seeks summary judgment on this basis.  The Court finds there are genuine issues of material fact with respect to Plaintiff's disparate treatment claim regarding the denial of Plaintiff's application for a promotion.  In addition, the Court finds that there are genuine issues of material fact regarding Plaintiff's retaliation claims.  Moreover, the Court finds that there are genuine issues of material fact with respect to Plaintiff's religiously hostile work environment claim. There are also genuine issues of material fact regarding Plaintiff's aiding and abetting claim against Defendant Diane Strong.  Accordingly, Defendants' motion will be denied insofar as it seeks summary judgment on these claims.  The Court finds that there are no genuine

issues of material fact with respect to Plaintiff's racially hostile work environment claim, failure to accommodate claim or Plaintiff's remaining disparate treatment claims as Plaintiff has failed to make out a *prima facie* case for each claim.  Defendants' motion will be granted with respect to these claims.  The Court will also overrule Defendants' objections to Plaintiff's evidence.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

## BACKGROUND

Plaintiff Sharon Wheeler is an African-American woman and a practicing Jehovah's Witness.  Plaintiff began working for Voicestream at its Wyoming Valley Mall location on May 22, 2001.  Mr. Tim Leshko, then manager of the Wyoming Valley Mall location, interviewed and subsequently made the decision to offer Plaintiff a retail position.  Plaintiff submitted evidence that at the time Mr. Leshko offered her the position, she informed him that her religion requires that she attend religious meetings on Tuesdays and Sundays.  Plaintiff submitted evidence that Mr. Leshko informed her that Voicestream would work with her to avoid conflict with her religious meetings.  Plaintiff also submitted evidence that Mr. Leshko told her to discuss her scheduling needs with Defendant Strong, then assistant manager at the Wyoming Valley mall location.

Plaintiff submitted evidence that beginning in July 2001, her coworkers began to subject her to various forms of mistreatment.  The evidence of record reveals that this conduct included an occasion on which Defendant Strong made a derogatory comment regarding members of Plaintiff's religious faith; during a sales trip, Defendant Strong also told Plaintiff that she would not have hired Plaintiff because she did not believe that she fit in; during this same trip, Defendant Strong asked Plaintiff numerous questions about

2

her religion; Plaintiff's co-workers also questioned Plaintiff on a regular basis concerning her religion; some of Plaintiff's co-workers mocked her concerning her religion; and one co-worker referred to Plaintiff as a "big black woman."  Plaintiff submits that she took great offense to the constant barrage of questions, the comments regarding her religion and the comment regarding her race.  Plaintiff also submitted evidence of mistreatment that while not overtly discriminatory, Plaintiff nonetheless believed was motivated by her race and religion.

In January 2002, Plaintiff applied for an assistant manager position which had recently opened up.  Plaintiff submitted evidence that Mr. Leshko told her that he was concerned about her being an assistant manager because of her need to attend religious meetings on a regular basis.  The evidence in the record indicates that prior to the time action was taken on Plaintiff's application, Defendant Strong was promoted to the position of manager.  The evidence indicates that because of Defendant Strong's promotion, she had assumed responsibility for making the decision regarding Plaintiff's application for a promotion.  Moreover, the evidence also indicates that as of the date of Defendant Strong's promotion, Mr. Leshko was no longer Plaintiff's supervisor.  Plaintiff submitted evidence that she interviewed with Mr. George Fedrizzi, the regional manager.  She also submitted evidence that Defendant Strong refused to interview her.  Instead, Defendant Strong interviewed two white, non-Jehovah's Witness males and ultimately hired Mr. Richard Chmelik.

Plaintiff also submitted evidence that following Defendant Strong's promotion to manager, Defendant Strong began to mistreat her.  Plaintiff submits that Defendant Strong criticized her, interfered with her sales, and yelled at her.  Plaintiff submitted

3

evidence that she complained to her superiors about Defendant Strong's conduct. Plaintiff submitted evidence that she informed her superiors that Defendant Strong and other co-workers at the Wyoming Valley Mall location were discriminating against her. Plaintiff submitted that following her complaint, Defendant Strong yelled at her for going over her head.

In late April 2002, Plaintiff took a leave of absence.  During this time, she received a note bearing Defendant Strong's name.  In the note was a request that Plaintiff return her keys to the Wyoming Valley location.  Plaintiff submitted evidence that she believed that this meant her employment had been terminated.  Defendants submitted evidence that Plaintiff's employment was not officially terminated until Plaintiff failed to return to work after the expiration of her leave period.

Plaintiff filed the Complaint in the instant matter on October 27, 2003.  Thereafter, Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed

4

issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq*, the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONN. STAT. ANN. § 951, *et seq.,* and 42 U.S.C. § 1981.  The Court will discuss these claims, as well as Defendants arguments for summary judgment below.[1]

### 1)    Exhaustion of Administrative Remedies

Defendants first argue that Plaintiff's claims brought pursuant to Title VII and the PHRA should be dismissed because Plaintiff failed to exhaust the administrative remedies available to her.  Under Title VII and the PHRA, litigants must exhaust the available administrative remedies prior to initiating an action in federal court.  *Hoffman v. R.I. Enter., Inc.*, 50 F. Supp. 2d 393, 399 (M.D. Pa. 1999).  Under the PHRA, the aggrieved party must do more than merely file a complaint.  *Lukus v. Westinghouse Elec. Corp.*, 419 A.2d 431, 454 (Pa. Super. Ct. 1980).  Rather, parties proceeding under the PHRA are required to make good faith use of the procedures in place for adjudicating the complaint.  *Id.*  The burden of pleading and proving that Plaintiff failed to exhaust the available administrative remedies falls upon Defendants.  *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *see also Fakete v. Aetna, Inc.*, 152 F. Supp. 2d 722, 730 (E.D.

---

[1]    The Court notes that Plaintiff's PHRA and § 1981 claims are subject to the same analysis as her Title VII claims.  *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995); *see also Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).  Thus, while the Court will discuss the merits of Plaintiff's claims under the framework of Title VII, the resulting analysis applies with equal force to Plaintiff's PHRA and § 1981 discrimination claims.

Pa. 2001) *rev'd on other grounds,* 308 F.3d 335 (3d Cir. 2004).

Defendants' primary contention is that Plaintiff failed to prosecute her claim with the Pennsylvania Human Rights Commission ("PHRC") in good faith.  In support of this assertion, Defendants direct the Court's attention to the decisions of several courts.  First, Defendants note *Richards v. Foulke Assoc., Inc.*, 151 F. Supp. 2d 610, 613-16 (E.D. Pa. 2001).  There, the court dismissed the plaintiff's PHRA claims because she had voluntarily withdrawn her case from consideration of the appropriate administrative agency.  *Id.*  Defendants also refer the Court to *Schweitzer v. Rockwell Int'l*, 586 A.2d 383, 387 (Pa. Super. Ct. 1991).  As in *Richards,* the *Schweitzer* court held that the plaintiff had not exhausted the remedies afforded her by the PHRA when she requested that the PHRC transfer her complaint to the EEOC.  *Id.*  The court construed this conduct as an affirmative request that the PHRC terminate its investigation.  *See id.*  In yet another similar case referred to by Defendants, *Ellis v. Mohenis Servs., Inc.*, the court dismissed the plaintiff's PHRA claims because counsel had requested in writing that the PHRC not go forward with its investigation.  No. CIV.A. 96-6307, 1997 WL 364468, at *3 (E.D. Pa. June 18, 1997).

The Court finds Defendants' reliance on the aforementioned cases misplaced.  In each case, the plaintiff took some affirmative step to remove the complaint from consideration by the relevant administrative agency.  The instant matter is distinguishable as the record is bereft of any evidence that Plaintiff took an affirmative step to remove her complaint from the PHRC's consideration prior to the passage of the one year waiting period.  Although the record reflects that Plaintiff did in fact cancel a fact-finding hearing

(Doc. 31, Ex. C), the Court finds that such conduct does not constitute a failure to pursue her claim in good faith.  Rather, the evidence reveals that the cancellation was due to a scheduling conflict.  (*Id.*)  Moreover, though Plaintiff's counsel may have made statements to PHRC officials concerning her opinions regarding the value of adjudicating Plaintiff's claim before the PHRC,[2] without more, the statements are simply not evidence of a lack of good faith.  Furthermore, there is no evidence in the record that the statements purportedly made by Plaintiff's counsel had any impact on the proceedings before the PHRC.  Moreover, Plaintiff's counsel's opinion regarding the value of her client's case or the remedy she ultimately desires to obtain for her client has no legal effect on the PHRC's ability to adjudicate Plaintiff's claim during the period which the PHRC maintains exclusive jurisdiction.

Defendants also refer the Court to *Mackay v. United States Postal Service*, 607 F. Supp. 271 (E.D. Pa. 1985).  In *Mackay*, the PHRC terminated the proceedings prior to the plaintiff's filing of an action in federal court because the plaintiff had failed to provide requested information.  *Id.*  However, in the instant matter, there is absolutely no evidence in the record that the PHRC terminated the proceedings because Plaintiff failed to cooperate with its investigation.  Although Defendants submitted evidence that Plaintiff did not respond to the PHRC's request for additional information, there is no evidence that the PHRC terminated its investigation because Plaintiff had failed to cooperate.

---

[2]   Voicestream submitted a letter from the PHRC which relates statements allegedly made by Plaintiff's counsel regarding Plaintiff's case.  Specifically, the letter states that Plaintiff's "attorney has indicated that she will be filing in court and that she values her cases on what a court can award and not what the Commission could grant."  (Doc. 26, Ex. K.)

Consequently, Defendants' assertion that the PHRC was never given an opportunity to fully investigate the merits of Plaintiff's claim is unfounded.  The PHRC had over a year to investigate Plaintiff's claim.  If Plaintiff failed to cooperate, the PHRC could have terminated its investigation as it did in *Mackey*.  In the absence of such action by the PHRC, the Court simply cannot say that Plaintiff prevented the PHRC from adjudicating her complaint.  Following the termination of the statutory waiting period, Plaintiff was well within her rights to initiate the instant proceedings.

With respect to Plaintiff's Title VII claims, Defendants have failed to submit any evidence that Plaintiff failed to exhaust the remedies afforded by the EEOC. Therefore, the Court finds that Defendants have not met their burden of establishing that Plaintiff failed to exhaust the administrative remedies made available to her by Title VII and the PHRA.  Accordingly, Defendants' motion for summary judgment on this basis will be denied.

## 2)      Failure to Accommodate

Voicestream[3] argues that it is entitled to summary judgment on Plaintiff's failure to accommodate claim because Plaintiff has failed to establish a *prima facie* case.  To make out a *prima facie* case of failure to make a religious accommodation under Title VII, Plaintiff must demonstrate that:  (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed Voicestream of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement.  *Shelton v. Univ. of Med.*

---

[3]      The Court notes that while the instant motion was filed on behalf of Defendants Voicestream and Strong, because there are different claims pending against each defendant, the Court will refer to only the relevant defendant in its discussion.

& *Dentistry of New Jersey*, 223 F.3d 220, 224 (3d Cir. 2000).  The final element of

Plaintiff's *prima facie* case may be satisfied by providing evidence of some tangible,

adverse employment action stemming from Plaintiff's noncompliance, including, but

certainly not limited to, termination.  *EEOC v. Reads, Inc.*, 759 F. Supp. 1150, 1155 (E.D.

Pa. 1991) (noting that Title VII plaintiff alleging failure to accommodate must prove he

"was adversely affected for failure to comply with the conflicting employment practice");

*see also Martin v. Enterprise* Rent-A-Car, No. Civ. A. 00-CV-6029, 2003 WL 187432, at

*9 (E.D. Pa. Jan. 15, 2003); Reid *v. Kraft Gen. Foods, Inc.*, Civ. A. No. 93-5796, 1995 WL

262531, at *4 (E.D. Pa. Apr. 27, 1995); *Gulick v. Borough of Pennbrook*, Civ. A. No. 88-

0786, 1989 WL 260273, at *4 (E.D. Pa. Nov. 17, 1989).  If Plaintiff establishes a *prima*

*facie* case, Voicestream is then afforded the opportunity to defend by either:  (1)

demonstrating that it offered a reasonable accommodation; or (2) demonstrating that the

accommodation sought cannot be accomplished because of a resulting undue hardship.

*Id.* at 225.

In the instant matter, Voicestream does not dispute that Plaintiff has demonstrated

that she is a Jehovah's Witness.  (Doc. 26 at 14.)  Nor does Voicestream dispute that

Plaintiff's religious practice of attending meetings on Tuesdays and Sundays conflicts

with Voicestream's scheduling policy that employee's be available to work seven days a

week.  (*Id.*)  However, Voicestream disputes that Plaintiff has satisfied the final element,

*i.e.*, that Voicestream disciplined Plaintiff for failing to comply with the conflicting

scheduling policy.

Voicestream is correct in noting that Plaintiff has failed to present evidence that

10

her ultimate termination was in any way related to the conflict between Plaintiff's religious practices and Voicestream's scheduling policy.  Therefore, the Court finds that no reasonable fact-finder could conclude that Plaintiff's termination resulted from Plaintiff's failure to comply with Voicestream's conflicting scheduling policy.  The Court also finds that no reasonable fact-finder could conclude that Voicestream refused to promote Plaintiff because of the conflict.  Although Plaintiff submitted evidence that Mr. Tim Leshko expressed concerns about promoting Plaintiff to the assistant manager position because of her need to attend religious meetings on Tuesdays and Sundays (Doc. 26, Ex. J at 2), Mr. Leshko was not the individual responsible for making the decision regarding Plaintiff's application (Doc. 35.2 at 52).  Rather, the evidence of record demonstrates that although Mr. Leshko was in fact Plaintiff's supervisor at the time the comment was made, Defendant Strong assumed responsibility for making the promotion decision when she took over for Mr. Leshko as Plaintiff's supervisor on February 1, 2002. (Doc. 26, Ex. V; Doc. 35.2 at 52.)  It must be noted, however, that Mr. Leshko was indeed Defendant Strong's supervisor prior to February 1, 2002, and then again following a corporate reorganization in May 2002.  (Doc. 26, Ex. V; Doc. 35.2 at 19; Doc. 35.3 at 22.) Nonetheless, during the interim period, there is no evidence that Mr. Leshko held a position of supervisory authority over Defendant Strong.  Moreover, there is no evidence that Mr. Leshko was in any way involved in the decision to not promote Plaintiff.  In fact, there is no evidence that Plaintiff's application for the promotion was even pending at the time Mr. Leshko made the alleged comments.  In the absence of evidence that Mr. Leshko was involved in or had influence over the decision making process resulting in the denial of Plaintiff's request for a promotion, the Court finds that no reasonable fact-finder

11

could conclude that the denial resulted from the conflict between Plaintiff's religious

practices and Voicestream's scheduling policy.  Accordingly, the Court will grant

Defendants' motion with respect to Plaintiff's failure to accommodate claim.

**3)      Disparate Treatment**

Voicestream also argues that it is entitled to summary judgment on Plaintiff's

disparate treatment claims.  One manner in which an employer violates Title VII is where

it engages in the practice of singling out a member of a protected group for treatment

less favorable than that received by other similarly situated individuals on the basis of an

impermissible criterion.  *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990)

(citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).  In such

cases of disparate treatment, proof of discriminatory intent is critical; "liability depends on

whether the [impermissible criterion] actually motivated the employer's decision."  *Reeves*

*v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co.*

*v. Biggins*, 507 U.S. 604, 610 (1993)) (internal quotations omitted).  Due to the invidious

nature of discriminatory conduct, perpetrators rarely provide plaintiffs with direct evidence

of discriminatory intent.  *See Metal Serv. Co.*, 892 F.2d at 347 n.6.  Consequently,

Plaintiff may sustain a Title VII claim by presenting either direct or circumstantial

evidence of intent.  *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990).  In the

absence of direct evidence, Plaintiff must resort to the burden-shifting framework set forth

in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973), to establish intent.  *Weldon*,

896 F.2d at 796-97.  However, in the rare instance where direct evidence of

discriminatory intent is available, the case is analyzed under the mixed-motive framework

set forth in the seminal case of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

In her brief in opposition, Plaintiff argues that she has presented direct evidence of discrimination.  Accordingly, Plaintiff submits, the Court should apply the *Price Waterhouse* framework.  However, as Voicestream correctly points out, to justify analysis of her claims under the *Price Waterhouse* framework, Plaintiff must submit direct evidence indicating that the decision maker relied on a protected characteristic, such as sex, race or religion, when the decision leading to the adverse employment action was made.  *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004).  In support of her contention that she has submitted direct evidence of discrimination, Plaintiff points to the comments made by Mr. Leshko regarding Plaintiff's suitability for the assistant manager position.  However, as noted above, Mr. Leshko was not the decision maker with regard to the denial of the promotion to assistant manager; nor is there any evidence that he was the decision maker which lead to any of the other adverse employment actions Plaintiff endured.  Consequently, evaluation of Plaintiff's disparate treatment claims must proceed in accordance with the *McDonnell Douglas* analytical framework.

A)    ***Prima Facie* Case**

Voicestream first contends that Plaintiff has failed to establish a *prima facie* case of discrimination. The burden-shifting framework set forth in *McDonnell Douglas* first requires Plaintiff to establish her *prima facie* case, which, if successful, raises an inference of discrimination.  *Keller v. Ortix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993); *Weldon*, 896 F.2d at 797.  Plaintiff may establish her *prima facie* case by showing:

13

(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).  The Court must determine, as a matter of law, whether Plaintiff has satisfied her *prima facie* case. *Sarullo v. United States Postal Service,* 352 F.3d 789, 797 (3d Cir. 2003).  Plaintiff, however, need only "produce evidence that is sufficient to convince a reasonable fact-finder to find all of the elements . . . ." *Keller*, 130 F.3d at 1108.  After this initial showing, the burden of production then shifts to Voicestream to "articulate some legitimate, nondiscriminatory reason for the adverse action." *Metal Serv. Co.*, 892 F.2d at 347 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In the instant matter, Plaintiff argues that she was subjected to the following adverse employment actions:  (1) denial of a transfer; (2) the termination of her employment; and (3) denial of promotion to the assistant manager position.[4]  The Court will address each of these below.

---

[4]     The Court notes that Plaintiff also refers to the receipt of criticism and the receipt of a written warning as adverse employment actions.  Such conduct simply does not constitute an adverse employment action.  *See Weston v. Pennsylvania,* 251 F.3d 420, 431 (3d Cir. 2001) (holding that a written reprimand does not constitute an adverse employment action where there is no resulting change in conditions of employment); *Robinson v. City of Pittsburgh*, 130 F.3d 1286, 1301 (1997) (holding that an oral reprimand is not an adverse employment action).  Therefore, this conduct will not be discussed.  Plaintiff also refers to Defendant Strong's interference with Plaintiff's attempts to make sales.  Again, this does not constitute an adverse employment action.  There is no evidence that Plaintiff actually lost sales because of the conduct of Defendant Strong, or that Plaintiff's employment or rate of compensation suffered because of Defendant Strong's conduct.  This too will not be discussed in the Court's *McDonnell Douglas* analysis.

#### i)        Denial of Transfer and Termination of Plaintiff's Employment

Plaintiff submitted evidence that she requested to be transferred from Voicestream's Wyoming Valley locale and that this request was denied.  (Doc. 35.2 at 37.)  It is undisputed that Voicestream terminated Plaintiff's employment.  Assuming *arguendo* that Plaintiff satisfies her burden with respect to the first three elements of her *prima facie* case, Plaintiff has failed to submit any evidence of circumstances surrounding the alleged denial of a transfer or the termination of her employment which give rise to an inference of discriminatory animus.  There is no evidence in the record that other individuals outside the relevant protected classes received transfers upon request; nor has Plaintiff directed the Court's attention to any evidence regarding the termination of her employment indicating that similarly situated individuals outside the relevant protected classes were treated differently.  Instead, Plaintiff devotes a considerable portion of her brief arguing that she was terminated when Defendant Strong requested Plaintiff return her keys to Voicestream's Wyoming Valley locale.[5]  Although the Court is skeptical of Plaintiff's position, it is of little consequence.  Regardless of when the termination actually occurred, Plaintiff still failed to submit evidence that supports an

---

[5]        The Court notes that as an apparent afterthought on the final page of her Brief In Opposition, Plaintiff also attempts to raise a constructive discharge claim.  (Doc. 31 at 42.)  To sustain a constructive discharge claim, Plaintiff must show that Voicestream "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)).  Plaintiff has failed to present any evidence from which a reasonable fact-finder could conclude that she resigned.  Moreover, the evidence clearly demonstrates that Plaintiff believed that she was terminated when Defendant Strong requested Plaintiff return her keys.  (Doc. 35.1 at 13-14.)

inference of discrimination.  Plaintiff's conclusory statements that she was terminated

because of discriminatory animus simply do not satisfy her burden.  *Lujan v.* 497 U.S. at

888.  Consequently, the Court will grant Voicestream's motion with respect to Plaintiff's

disparate treatment claim relating to the denial of a transfer and the termination of her

employment.

### ii)      Denial of Promotion

Plaintiff also alleges that she was discriminated against when her application for a

promotion was denied.  With respect to this claim, Plaintiff asserts membership in three

protected groups, *i.e.* she is a Jehovah's Witness, an African-American, and a female.

Voicestream argues that Plaintiff was not qualified for the position of assistant manager

and hence, cannot satisfy her burden.  In response, Plaintiff argues that there is

substantial evidence of Plaintiff's qualifications for the position in question.  The Court

finds the United States Court of Appeals for the Third Circuit's decision in *Ezold* to be

very instructive on this issue.  There, the Third Circuit stated:

> While more than a denial of promotion as a result of a
> dispute over qualifications must be shown to prove
> pretext, such a dispute will satisfy the plaintiff's prima
> facie hurdle of establishing qualification as long as the
> plaintiff demonstrates that [s]he was sufficiently qualified
> to be among those persons from who a selection, to
> some extent discretionary, would be made.

*Ezold*, 983 F.2d at 523 (internal quotations and citations omitted).  The Court further

noted that Title VII plaintiff's should not be subjected to an onerous burden when

attempting to make out their *prima facie* case.  *Id.*  The Court agrees.  Plaintiff has

submitted evidence that she had past managerial experience, had past sales experience

16

and was a successful sales person at Voicestream.  (Doc. 35.1 at 26 & 178; Doc. 35.2 at 68 & 99.)  In addition, Plaintiff submitted evidence that she was the only current employee who received consideration for the position.  (Doc. 35.3 at 91 & 94.)  In light of this evidence, and the relatively light burden at this stage of the analysis, the Court finds that Plaintiff has satisfied the second element of her *prima facie* case.

In addition, Plaintiff has established the remaining elements of her *prima facie* case as she was denied the promotion, and the position was filled by a white, non-Jehovah's Witness male (Doc. 35.3 at 126), thus raising an inference of discriminatory animus.  In accordance with *McDonnell Douglas,* the burden shifts to Voicestream to provide a facially legitimate, nondiscriminatory reason for the adverse employment action taken against Plaintiff.

### B)    Non-discriminatory Reason

An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial evidence." *Keller*, 896 F.2d at 797.  To satisfy its burden, Voicestream need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  Rather, it must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.*  Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Voicestream are but a pretext, aimed at concealing Voicestream's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257).

17

Here, Voicestream submits that Plaintiff's application for a promotion was denied because an individual with "recent sales and management experience" was hired.  (Doc. 26 at 26.)  Thus, Plaintiff bears the ultimate burden of proving that Voicestream's proffered reason is a pretext.

### C)      Pretext

To survive a summary judgment motion, Plaintiff must present "some evidence, direct or circumstantial, from which a fact-finder could reasonably either:  (1) disbelieve [Voicestream's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Voicestream's] action." *Fuentes*, 32 F.3d at 764.  The Third Circuit Court of Appeals has held that Plaintiff may establish that Voicestream's proffered reasons are "unworthy of credence," *Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 204 (3d Cir. 1987), by introducing evidence that the employer subjected individuals outside the protected class to more favorable treatment.  *See, e.g., Fuentes*, 32 F.3d. at 765; *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 179; *Weldon*, 896 F.2d at 797.  If Plaintiff successfully points to evidence sufficient to discredit Voicestream's tendered reasons, Plaintiff need not submit additional evidence beyond the initial *prima facie* case in order to survive summary judgment.  *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995).  Even where the majority of this evidence comes from uncorroborated deposition testimony, the Third Circuit Court of Appeals has held that this is sufficient to survive summary judgment.  *Weldon*, 896 F.2d at 800.

In the case *sub judice*, Plaintiff has submitted evidence that an individual outside the relevant protected classes received treatment more favorable than that received by

Plaintiff.  (Doc. 35.3 at 126.)  In addition, Defendant Strong's admission that she was

unaware of Plaintiff's managerial experience also calls Voicestream's proffered rationale

into question.  As previously noted, Voicestream argues that Plaintiff's application was

denied because an individual with "recent sales and management experience" was hired.

(Doc. 26 at 26.)  However, Defendant Strong, the individual responsible for making the

decision, was, by her own admission, unaware of Plaintiff's managerial experience.  (Doc.

35.3 at 97 & 126.)  This reality stems from the fact that Defendant Strong did not

interview Plaintiff when she was first hired (Doc. 35.1 at 39); nor did she interview Plaintiff

when she applied for the assistant manager position (Doc. 35.3 at 97).  Thus, it appears

that Voicestream is asserting that Defendant Strong denied Plaintiff's application because

Mr. Chmelik had superior managerial experience, despite the fact that Defendant Strong

was wholly unaware of Plaintiff's own managerial experience.  Consequently, a

reasonable fact-finder could conclude that because Defendant Strong had no basis for

evaluating Plaintiff's past work experience, Voicestream's proffered rationale, *i.e.* that Mr.

Chmelik was more qualified, is simply a post hoc coverup.  It is also of note that

Defendant Strong admitted that she had decided not to promote Plaintiff prior to having

ever interviewed Mr. Chmelik for the position.  (Doc. 35.3 at 94 & 104.)  Moreover,

Defendant Strong offers a different explanation for denying Plaintiff's application, *i.e.*

operational issues, including a lack of initiative in receiving operations training.  (Doc.

35.3 at 102.)   In light of the evidence of record, the Court finds that there are genuine

issue of material fact regarding the validity of the nondiscriminatory reason for denying

Plaintiff's application proffered by Voicestream.  Accordingly, the Court will deny

Voicestream's motion with respect to this claim.

**4)     Retaliation**

Analysis of a pretext retaliation claim, such as the one averred by Plaintiff, follows the by now familiar *McDonnell Douglas* burden-shifting framework discussed above. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).  Plaintiff first must establish her prima facie case of retaliation by demonstrating:  (1) she engaged in a protected activity; (2) Voicestream subjected her to an adverse employment action subsequent to or contemporaneously with such activity; and (3) a causal link exists between the protected activity and the adverse employment action.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

In the instant matter, Plaintiff submitted evidence that she engaged in a protected activity when she complained to her supervisor, Defendant Strong, and Mssrs. Fedrizzi and Leshko concerning the alleged discriminatory treatment.  (Doc. 35.1 at 166, 215-6, 220 & 222.)  There is also evidence that Plaintiff was subjected to various adverse employment actions when Plaintiff's application for a promotion was denied, Plaintiff's request for a transfer was denied, and Voicestream terminated Plaintiff's employment.  However, as previously noted the written warning, the criticism and the interference with Plaintiff's sales do not constitute adverse employment actions.  The Court also finds, and Voicestream does not dispute, that a causal nexus links Plaintiff's complaints to her superiors and the adverse employment actions described above.  Thus, in accordance with the *McDonnell Douglas* framework, the burden of production shifts to Voicestream to provide a legitimate non-discriminatory explanation for the adverse employment actions.

### A)    Denial of Promotion

Voicestream contends that Plaintiff's application for a promotion was denied because:  (1) Plaintiff lacked sufficient experience to perform the operational duties of the assistant manager position; (2) Mr. Chemlik had recent retails sales and management experience.  (Doc. 26.1 at 32.)  Despite the production of these legitimate non-discriminatory reasons for the denial of Plaintiff's application for a promotion, the Court finds that Voicestream is not entitled to summary judgment because sufficient evidence of pretext has been submitted.

With respect to Voicestream's explanation regarding Plaintiff's lack of operational experience, the evidence is clear: the individual eventually hired for the position had zero experience with Voicestream's operational procedures.  (Doc. 35.3 at 126.)  Therefore, a reasonable fact-finder could certainly conclude that Plaintiff's lack of operational experience as an explanation as to why her application for a promotion was denied is simply unworthy of belief.  Turning next to Voicestream's explanation regarding Plaintiff's lack of recent retail management experience, as discussed previously, the evidence in the record demonstrates that Defendant Strong was unaware of Plaintiff's past managerial experience, due in part to her refusal to interview Plaintiff for the position.  *See supra* p. 19.  Therefore, Defendant Strong, the ultimate decision maker, had no knowledge to support the purported rationale for her employment decision.  *See supra* p. 19.  Finally, it is worthy of note that Voicestream offered different rationales for its conduct within its supporting memoranda.  In its discussion of Plaintiff's disparate treatment claim, no mention is made of Plaintiff's lack of operational experience.  (Doc. 26 at 26.)  However, as just noted, Voicestream submitted Plaintiff's lack of operational

experience as an explanation for the denial of her application for a promotion when discussing Plaintiff's retaliation claim. (Doc. 26 at 32.) While certainly not determinative, the Court finds that this inconsistency calls into question the veracity of Voicestream's proffered rationale. Therefore, the Court will deny Defendants' motion with respect to Plaintiff's retaliation claim regarding the denial of her application for a promotion as genuine issues of material fact exist.

### B)   Denial of Transfer

As Voicestream did not regard this conduct as an adverse employment action (Doc. 26 at 31), it did not present a legitimate non-discriminatory reason for its action. Therefore, the Court will deny Defendants' motion with respect to Plaintiff's retaliation claim regarding the denial of a transfer.

### C)   Termination of Employment

Voicestream submits that it terminated Plaintiff's employment because she failed to return to work following a medical leave of absence. (Doc. 26 at 33.) The Court finds that despite this legitimate nondiscriminatory reason, Voicestream is not entitled to summary judgment because Plaintiff has presented evidence that this explanation is pretextual. Specifically, Plaintiff submitted evidence that she thought her employment had been terminated when she received a note, bearing Defendant Strong's name, which requested that Plaintiff return her keys. While Voicestream offered evidence disputing that Plaintiff actually had this belief  (Doc. 26, Exs S & T), it is not the role of the Court to weigh conflicting evidence. *Anderson*, 477 U.S. at 249. Rather, a jury sitting as the finder of fact should determine whether Voicestream's proffered explanation is worthy of

22

belief.  Therefore, the Court will deny Voicestream's motion with respect to Plaintiff's

retaliation claim regarding the termination of her employment.

**5)      Hostile Work Environment**

Voicestream also seeks summary judgment on Plaintiff's hostile work environment

claims.  As repeatedly noted by the Supreme Court, notwithstanding Title VII's explicit

mention of "employment decisions with immediate consequences, the scope of the

prohibition is not limited to economic or tangible discrimination and . . .  it covers more

than terms and conditions in the narrow contractual sense." *Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 786 (1998).  To make out a *prima facie* case for a hostile work

environment claim brought under Title VII, the standard adopted by the Third Circuit

Court of Appeals requires that Plaintiff demonstrate the following five elements:  (1) she

suffered intentional discrimination because of her race or religion; (2) the discrimination

was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the

discrimination would detrimentally affect a reasonable person of the same race or

religion; and (5) the existence of *respondeat superior* liability.  *Abramson v. William*

*Paterson College of New Jersey*, 260 F.3d 265, 276-77 (3d Cir. 2001).  The Supreme

Court has noted that only discriminatory harassment so "severe or pervasive" such that it

"alter[s] the conditions of [the victim's] employment and create[s] an abusive working

environment," is actionable under Title VII.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.

57, 67 (1986).  "Conduct that is not severe or pervasive enough to create an objectively

hostile or abusive work environment -- an environment that a reasonable person would

find hostile or abusive -- is beyond Title VII's purview." *Id.*  The Court must examine the

record as a whole in determining whether Plaintiff can establish that she was subjected to a hostile work environment, concentrating on the overall scenario instead of individual incidents.  *See Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001)*.*

Plaintiff may establish a hostile work environment claim by presenting evidence of overt discrimination, or by presenting evidence of both facially neutral mistreatment from which discriminatory animus may be inferred and overt discrimination.  *See id.* at 261. The Third Circuit Court of Appeals has noted that:

> the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment.

*See id.*  At the same time, simple teasing, offhand comments, and isolated incidents that are not "extremely serious" do not give rise to discriminatory changes in the terms and conditions of Plaintiff's employment.  *See Faragher,* 524 U.S. at 775.  In the instant matter, Plaintiff asserts hostile work environment claims based on both her religion and race.  Each of these claims will be discussed below.

### A)      Religion

Plaintiff has met her *prima facie* case with respect to her claim that she was subjected to a religiously hostile work environment.  Plaintiff has submitted evidence of both overtly discriminatory comments regarding her religion as well as facially neutral conduct which non-Jehovah's Witnesses were not subjected to.  In January 2002, Mr. Leshko, Plaintiff's manager at the time, informed Plaintiff that he had concerns with regard to her suitability for the position of assistant manager because of Plaintiff's inability

24

to work seven days a week.  (Doc. 35.1 at 171.)  In addition, in early 2002, Mr. Tom Schultz stated in Plaintiff's presence that he and a coworker, Ms. Amanda Hasaka, had to watch what they said because Plaintiff was "so religious and innocent."  (Doc. 35.1 at 92.)  Furthermore, Plaintiff submitted evidence that she received an email which contained a religious message from Defendant Strong.  (Doc. 35.1 at 95.)  Plaintiff also submitted evidence that Defendant Strong indicated that Jehovah's Witnesses were "usually pushy and very talkative about their religion."  (Doc. 35.1 at 88.)  In addition, Plaintiff submitted evidence that she faced a constant barrage of questions concerning her religion.  (Doc. 35.1 at 84, 88-89, 93 & 97.)  Finally, Plaintiff submitted evidence that Defendant Strong scheduled her to work on Tuesdays and Sundays even though she knew that Plaintiff desired to attend her religious meetings on those days.  (Doc. 35.1 at 44.)

        Plaintiff also submitted evidence of facially neutral conduct.  Plaintiff submitted evidence that Defendant Strong interfered with Plaintiff's sales efforts (Doc. 31.1 at 81), gave Plaintiff a hard time when she asked for time off (Doc. 31.1 at 163-4), refused to provide Plaintiff operations training (Doc. 31.1 at 170), told Plaintiff she would not have hired her (Doc. 31.1 at 84), and refused to interview Plaintiff for the assistant manager position (Doc. 35.3 at 97).  Plaintiff submitted evidence that non-Jehovah's Witnesses were not subjected to such treatment.  (Doc. 35.1 at 81, 97, 163-64 & 170.)  In light of the foregoing, and the fact that such conduct occurred frequently during Plaintiff's relatively short tenure as an employee of Voicestream, the Court finds that Plaintiff has satisfied both the first and second elements of her *prima facie* case.

        The Court also finds that Plaintiff has adequately met her burden with respect to

the remaining elements of her *prima facie* case.  It is clear that Plaintiff was in fact affected by the discrimination she was subjected to while in Voicestream's employ.  (Doc. 26, Ex. T.)  Moreover, although the evidence submitted does demonstrate that some of the comments made by Plaintiff's co-workers could be perceived as innocuous, a reasonable fact-finder could surely conclude that an objectively reasonable Jehovah's Witness would be affected by the aforementioned conduct.  Finally, Plaintiff has demonstrated the existence of *respondeat superior* liability.  Two of the alleged perpetrators of the overtly discriminatory conduct were Plaintiff's direct supervisors. Moreover, Plaintiff testified that she informed Mssrs. Leshko and Fedrizzi of the situation she was facing at work.  (Doc. 35.1 at 66-67.)  In light of the foregoing, the Court finds that there are several issues of triable fact for a jury to resolve.  Accordingly, Voicestream's motion for summary judgment on Plaintiff's religiously hostile work environment claim will be denied.

     **B)    Race**

     Plaintiff has failed to meet her burden with respect to her racially hostile work environment claim.  Plaintiff presented evidence of a single overt racially offensive comment when a co-worker referred to Plaintiff as a "big black woman."  (Doc. 35.1 at 156.)  The Court notes that Plaintiff also alleges that policies were changed based on her race.  However, Plaintiff presents absolutely no evidence, other than her conclusory statement to this effect, that the policy change was motivated by Plaintiff's race.  It is also important to note that Plaintiff also testified that she was denied a transfer, criticized, required to return store keys, and given written warnings for being late.  However, Plaintiff fails to present any evidence from which a reasonable fact-finder could infer

discriminatory animus.  Moreover, Plaintiff alleges that she was denied training while other individuals not in a protected class were afforded training.  Specifically, Plaintiff refers to the training of Lisa Colon.  The evidence submitted demonstrates that Lisa Colon is a member of a protected class because she is of Hispanic decent.  (Doc. 26, Ex. C, ¶ 8.)  Plaintiff does not dispute this fact.  Contrary to Plaintiff's assertions, there is no genuine issue of material fact with respect to the ethnicity of Ms. Colon.  Although the Court is mindful that satisfaction of the first element does not require that the Court peer into the mind of the alleged perpetrator to discern his intent, there must at least be some showing that the conduct was based on a protected category.  *See Abramson*, 260 F.3d at 278.

Plaintiff did submit evidence of facially neutral conduct in which white employees received more favorable treatment than she, thus raising an inference of discriminatory animus.  Specifically, Plaintiff submitted evidence Defendant Strong interfered with her sales, treated white employees differently when they asked for time off, and refused to interview Plaintiff for the assistant manager position.  (Doc. 35.1 at 81, 163-64, 170 & 288.)  However, even assuming for the purposes of the Court's analysis that the aforementioned conduct constitutes intentional discrimination, Plaintiff has failed to make out the second element of her *prima facie* case, *i.e.* that the discriminatory conduct was pervasive and severe.  In rendering a determination as to whether an employee was subjected to pervasive and severe discrimination, the Court must look to the totality of the circumstances including:

> the frequency of the discriminatory conduct; its severity;
> whether it is physically threatening or humiliating, or a
> mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  In evaluating these factors, as well as the overall situation faced by Plaintiff, the Court finds that no reasonable fact-finder could conclude that Plaintiff was subjected to a racially hostile work environment.  There was only a single act of abusive conduct based on Plaintiff's race.  There is no evidence that Plaintiff was ever physically threatened or humiliated.  The evidence submitted simply does not demonstrate that Plaintiff's work place became so abusive as to change the terms of her employment.  A single abusive comment followed by discourteous treatment not overtly based on race simply does not create a racially hostile work environment. While the aforementioned discourteous treatment may be sufficient to establish a disparate treatment claim, it simply does not rise to the level of a racially hostile work environment.   Accordingly, the Court will grant Voicestream's motion for summary judgment on Plaintiff's racially hostile work environment claim.

**6)      Aiding and Abetting**

Defendant Strong seeks summary judgment on Plaintiff's claim that Defendant Strong is liable under the PHRA for aiding and abetting Voicestream's discriminatory practices.  Defendant Strong's sole argument for summary judgment on this claim is that because Voicestream is entitled to summary judgment on all of the aforementioned claims, she can not be held liable in her individual capacity.  As the Court has found that there are genuine issues of material fact with regard to Plaintiff's claims against Voicestream, Defendant Strong's argument must fail.  Accordingly, the Court will deny the motion insofar as it seeks summary judgment on Plaintiff's claim against Defendant Strong for aiding and abetting.

28

**7)      Defendants' Objections**

Accompanying Defendants' Reply Brief were objections to certain evidence submitted to the Court by Plaintiff in support of her Brief In Opposition.  In reaching its decision, the Court did not rely on any of the evidence to which Defendants object.  Therefore, the Court will overrule the objections as moot.

## CONCLUSION

The Court finds that Defendants have failed to submit evidence that Plaintiff failed to exhaust the available administrative remedies.  Therefore, the Court will deny Defendants' motion insofar as it seeks summary judgment on this basis.  The Court finds there are genuine issues of material fact with respect to Plaintiff's disparate treatment claim regarding the denial of Plaintiff's application for a promotion.  In addition, the Court finds that there are genuine issues of material fact regarding Plaintiff's retaliation claims.  Moreover, the Court finds that there are genuine issues of material fact with respect to Plaintiff's religiously hostile work environment claim. There are also genuine issues of material fact regarding Plaintiff's aiding and abetting claim against Defendant Diane Strong.  Accordingly, Defendants' motion will be denied insofar as it seeks summary judgment on this claims.  The Court finds that there are no genuine issues of material fact with respect to Plaintiff's racially hostile work environment claim, failure to accommodate claim or Plaintiff's remaining disparate treatment claims as Plaintiff has failed to make out a *prima facie* case.  Defendants' motion will be granted with respect to these claims.  The Court will also overrule Defendants' objections to Plaintiff's evidence.

An appropriate Order follows.


May 24, 2005                     /s/ A. Richard Caputo
Date                             A. Richard Caputo
                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHARON WHEELER,

       Plaintiff,

          v.

VOICESTREAM WIRELESS SERVICES,
a/k/a VOICESTREAM a/k/a
VOICESTREAM WIRELESS
CORPORATION a/k/a T-MOBILE USA,
INCORPORATED and DIANE STRONG,

       Defendants.

CIVIL ACTION NO. 3:03-CV-1916

(JUDGE CAPUTO)

<u>**ORDER**</u>

    **NOW**, this __24th__ day of May, 2005, **IT IS HEREBY ORDERED** that Defendants'

Motion For Summary Judgment is **GRANTED in part** and **DENIED in part**:

    (1)    Defendants' motion is **GRANTED** insofar it seeks summary judgment on:

        (a)    Plaintiff's failure to accommodate claim.

        (b)    Plaintiff's racially hostile work environment claim.

        (c)    Plaintiff's disparate treatment claims regarding:

            (i)    The termination of Plaintiff's employment.

            (ii)    The denial of Plaintiff's request for a transfer.

    (2)    Defendants' motion is **DENIED** insofar as it seeks summary judgment on
        the basis that Plaintiff failed to exhaust the available administrative
        remedies.

    (3)    Defendants' motion is also **DENIED** insofar as it seeks summary judgment
        on:

        (a)    Plaintiff's religiously hostile work environment claim.

(b)   Plaintiff's disparate treatment claim regarding the denial of Plaintiff's application for a promotion.

(c)   Plaintiff's retaliation claims regarding:

(i)   The denial of Plaintiff's application for a promotion.

(ii)   The denial of Plaintiff's request for a transfer.

(iii)   The termination of Plaintiff's employment.

(d)   Plaintiff's aiding and abetting claim against Defendant Strong.

(4)   Defendants' objections to Plaintiff's evidence are **OVERRULED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

2